Nicolette Glazer Esq. (CSBN 209713)
nicolette@glazerandglazer.com
Larry R Glazer Esq. (CSB 200644)
larry@glazerandglazer.com
LAW OFFICES OF LARRY R GLAZER
1999 Avenue of the Stars #1100
Century City, California 90067
T:310-407-5353
F:310-407-5354
ATTORNEYS FOR PLAINTIFFS and
THE PUTATIVE CLASS

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRESTIGE TRANSPORTATION INC, SUPERIOR OVERNIGHT SERVICES INC., AMERILOGISTICS GROUP INC, AND STAM PROPERTIES LLC, on behalf of themselves and all similarly situated persons.<br><br>   Plaintiffs,<br><br>vs.<br><br>UNITED STATES SMALL BUSINESS ADMINISTRATION, JOVITA CARRANZA AS THE ADMINISTRATOR OF THE SBA, STEVEN MNUCHIN AS THE SECRETARY OF THE UNITED STATES DEPARTMENT OF THE TREASURY, AND DOES 1 TO 5.<br><br>   Defendants | Case No.:<br><br>**COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND EQUITABLE RELIEF and DAMAGES**<br><br>**\*CLASS ACTION\*** |

Plaintiffs Prestige Transportation Inc., Superior Overnight Services Inc., Amerilogistics Group, and STAM Properties LLC, on behalf of themselves and other similarly situated persons, submit this Complaint for Declaratory Judgment, Damages, and Injunctive Relief to rescind the unlawful and/or *ultra vires* policies, practices, and rules implemented by Defendants to carry out the directive of the CARES Act's Emergency Advance Grants to eligible businesses. The challenged portions of SBA's policies, practices, and rules render certain business applicants categorically ineligible for EIDL Emergency Grants under the CARES Act in contravention of the unambiguous statutory language and the limited and well-defined authority that Congress delegated to SBA and Defendants. In support of this complaint Plaintiffs state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the present action pursuant to 28 U.S.C. §§1331, 1343, 15 U.S.C. § 634(b)(1) and can award the declaratory relief requested pursuant to 28 U.S.C. §§2201-2202, 5 U.S.C. §702, and 28 U.S.C. §1361.

2.      This Court can compel agency action that is unlawfully withheld or that is contrary to law, an abuse of discretion, or arbitrary and capricious in accordance with 5 U.S.C. §§555(b), 706. This Court also has jurisdiction to review executive action that is *ultra vires* or in excess of statutory authority. *Jafarzadeh v Duke,* 270 F.Supp.3rd 296, 311 (D.D.C. 2017); *Harmon v Brucker*, 355 U.S. 579, 581-82

(1958) ("Generally, judicial relief is available to one who has been injured by an act of a government official which is in excess of his express or implied powers.")

3.    Pursuant to 15 U.S.C. §634(b) jurisdiction is also conferred upon any United States District Court to determine controversies against the Administrator of SBA.

4.    This suit is further authorized by law to redress deprivations of rights, privileges, and immunities secured by the Fifth Amendment to the United States Constitution, and declaratory and injunctive relief.

5.    Venue is proper in this district pursuant to 28 U.S.C. §1391(b) and (e), as the events giving rise to Plaintiffs' causes of action arose or exist, in part, in this district; at least one Plaintiff resides in this district; and the government Defendants are present and conduct business in this district. All actions that give rise to the present action were committed by Defendants in their official capacity and under color of legal authority and as such are considered committed within this judicial district.

PARTIES

6.    Plaintiff Prestige Transportation Inc. ('PTI') is a corporation registered and incorporated under the laws of the state of California with a principal place of business in the city of Fontana, county of San Bernardino, California. PTI is a licensed and registered interstate federal motor carrier with the FMCSA and U.S. Department of Transportation and in good standing.

7.    Plaintiff Superior Overnight Services Inc. ('SOS') is a corporation registered and incorporated under the laws of the state of Illinois with a principal place of business in the city of Bartlett, Illinois. Superior Overnight Services Inc. is a

licensed and registered interstate federal motor carrier with the FMCSA and U.S. Department of Transportation and in good standing

8.    Plaintiff Amerilogistics Group, Inc. ('AGI') is a corporation registered and incorporated under the laws of Illinois, with a principal place of business in the City of Palatine, Illinois and in good standing.

9.    Plaintiff STAM Properties LLC ('STAM') is a four member Delaware limited liability company with a principal place of business in Clifton Park, New York and in good standing.

10.    Defendant United States Small Business Administration ("SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C. §633, *et seq*. The SBA maintains a branch office at 312 N Spring St, Los Angeles, CA 90012, which is within the Central District of California.

11.    Defendant Jovita Carranza ("Carranza," or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued solely in her official capacity as the Administrator of the SBA.

12.    Defendant Steven Mnuchin is the Secretary of the United States Department of the Treasury ("Treasury"). He is sued solely in his official capacity and as a necessary party to the extent needed to provide the relief requested by Plaintiffs.

13.    The true names or capacities, whether individual, corporate, associate or otherwise, of the Defendants named herein as Does 1 through 5 are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and Plaintiffs will amend this complaint to show their true names and capacities when ascertained. Plaintiffs are informed, believe, and thereupon allege that each of the fictitiously named Defendants are responsible to Plaintiffs for the injuries suffered

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 4

and alleged herein, or are subject to the jurisdiction of the Court as necessary parties for the relief herein requested.

14.     Plaintiffs are informed, believe, and thereon allege that each Doe Defendant is now, and was at all times mentioned herein, the agent, partner, contractor, or employee of the other named Defendants, and that all of the acts and conduct alleged herein were performed within the course and scope and in the furtherance of such agency or employment relationship.

FACTS

15.     Mr. Lubomir Anguelov founded PTI in December 2012 as a for-profit private corporation. PTI was granted full authority as a federal interstate motor carrier in 2013. Since its registration PTI has been a California corporation in good standing. PTI pays taxes in the Unites States and has no corporate presence outside of the United States.

16.     Mr. Anguelov is PTI's sole owner. PTI has no parent companies or subsidiaries.

17.     At all relevant times to this matter Mr. Anguelov was and has been a USCIS work-authorized non-citizen with a pending application for adjustment of status to that of lawful permanent resident (green card).

18.     PTI transports cargo throughout the continental United States as part of interstate commerce on behalf of its partners, customers, brokers, shippers, and manufacturers. As of 31 December 2019 PTI had a fleet of 145 leased trucks and confirmed-bid commitments with pre-approved owner-operators; the size of the fleet fluctuated during the past 18 months between 116 and 175 trucks.

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 5

19.    Mr. Nickolay Dinkov purchased SOS, a for-profit domestic corporation, in November 2011. Mr. Dinkov, the sole owner and shareholder of the company, has used the assets of the existing business (MC and DOT authority issued by FMCSA) to restructure and reorganize SOS from a private motor carrier for hire under 49 USC §13102(15) -- with two trucks and two trailers -- into a motor carrier as defined in 49 USC §13102(14) with authority to operate as a "common carrier", providing transportation services to the public and publishing rates and routes under the Federal Motor Carrier Act with a fleet of over 300 trucks.

20.    SOS offers logistics services including B2B (Business – to – Business), B2C (Business – to – Customer), Dock-to-Dock, and Dock-to-Door (lift gate, inside deliveries) transportation. Its clients include dry goods shippers from all over the USA and direct shippers who require specialized transportation services such as refrigerated transport, a form of climate-controlled transportation designed to maintain a cool or frozen temperature depending on the product. Refrigerated transport is key in food safety and the backbone of the U.S. food supply chain.

21.    SOS pays taxes in the Unites States and has no corporate presence outside of the United States.

22.    In 2010 Mr. Dinkov also established AGI as a for-profit domestic corporation. AGI operates as a private carrier for hire based on non-exclusive leased trip contracts with motor carriers who offer less than truckload services.

23.    AGI pays taxes in the Unites States and has no corporate presence outside of the United States.

24.    Mr. Dinkov was admitted to the U.S. pursuant to a lawfully issued non-immigrant visa with duration of status. Since 2017 Mr. Dinkov has an Immigrant

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 6

Petition by Alien Investor pending before the USCIS with SOS as a qualifying enterprise.

25.    In the ordinary course of business PTI and SOS enter into exclusive or non-exclusive leases with individual and corporate owner-operators as permitted by 49 U.S.C. §14102 and 49 C.F.R. §376.11 *et seq.* to augment their fleet as required by market conditions.

26.    STAM is a four-member owned and managed for profit limited liability company which owns and rents several apartment units in Whitehall, NY to low income households.

27.    All members of STAM are United States citizens.

28.    On 21 January 2020 the Center for Disease Control and Prevention ("CDC") confirmed the first U.S. case of a new coronavirus known as COVID-19.

29.    On 30 January 2020 the World Health Organization ("WHO") declared the COVID-19 outbreak to be a "public health emergency of international concern."

30.    On 11 March 2020 the WHO declared that the spread of COVID-19 had become a pandemic.

31.    On 13 March 2020 President Trump issued the Coronavirus Disease 2019 (COVID-19) Emergency Declaration applicable to the United States, which declared that the pandemic was of "sufficient severity and magnitude to warrant an emergency declaration for all states, territories and the District of Columbia."

32.    On 19 March 2020 California Governor Gavin Newsom issued an executive Stay at Home Order for the State of California to prevent the spread of COVID-19.

33.    On 20 March 2020 Illinois Governor Jay Robert Pritzker issued an executive Stay at Home Order for the State to prevent the spread of COVID-19.

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 7

34.     On 22 March 2020 New York Governor Andrew Cuomo issued a "New York State on PAUSE" executive order to prevent the spread of COVID-19.

35.     According to John Hopkins University of Medicine, as of 28 September 2020 approximately 7.1 Americans have been infected and over 204,500 have died. The pandemic has devastated the U.S. economy and shattered life as we knew it.

### A. COVID-19 NATIONAL EMERGENCY AND ESSENTIAL WORKERS

36.     Cybersecurity and Infrastructure Security Agency (CISA) executes the Secretary of Homeland Security's responsibilities as assigned under the Homeland Security Act of 2002 to provide strategic guidance, promote a national unity of efforts, and coordinate the overall federal efforts to ensure the security and resilience of the Nation's critical infrastructure. CISA uses trusted partnerships with both the public and private sectors to deliver infrastructure resilience assistance and guidance to a broad range of partners.

37.     On 19 March 2020 DHS, acting through Christopher C. Krebs Director of CISA, issued a Memorandum on Identification of Essential Critical Infrastructure Workers during the COVID-19 Response to the pandemic (CISA Memorandum).

38.     In the CISA Memorandum DHS declared that "functioning critical infrastructure is imperative during the response to the COVID-19 emergency for both public health and safety as well as community well-being." It further stated that "[c]ertain critical infrastructure industries have a special responsibility in these times to continue operations."

39.     In accordance with this mandate, and in collaboration with other federal agencies and the private sector, CISA developed an initial list of "Essential Critical Infrastructure Workers" to help the federal, state, and local governments and the public sector as they worked to protect their communities "while ensuring continuity of functions critical to public health and safety, as well as economic and national security."

40.     Transportation and Logistics were specifically identified as an "essential critical infrastructure" sector and industry.

41.     In the CISA Memorandum DHS identified workers "who conduct a range of operations and services that are essential to continued critical infrastructure viability…" DHS explained: "[t]he industries they support represent, but are not necessarily limited to, medical and healthcare, telecommunications, information technology systems, defense, food and agriculture, transportation and logistics, energy, water and wastewater, law enforcement, and public works."

42.     The CISA Memorandum specifically identified companies and employees "supporting or enabling transportation functions", including truck drivers, as essential workers that support "critical infrastructure, capabilities, functions, and services."

## B. CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT OF 2020

43.     On 25 March 2020, in response to the economic damage caused by the COVID-19 pandemic, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES" Act). The CARES Act (P.L. 116-136) was passed by the House of Representatives the following day and signed into law

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 9

by President Trump on 27 March 2020. This landmark legislation included a $377 billion package of emergency economic assistance and other support to help individuals, families, businesses, and health-care providers cope with the economic and public health crises triggered by the pandemic. Of particular relevance to small businesses like Plaintiffs, the CARES Act created two new temporary loan programs, the Paycheck Protection Program ("PPP"), CARES Act. §1102, and Emergency Economic Injury Disaster Loans program (the "Emergency EIDL"), codified at 15 U.S.C. §9009. The PPP was enacted by Congress as a temporary extension of the SBA's Section 7(a) authority to provide relief to small business concerns experiencing economic hardship as a result of the COVID-19 crisis; while the Emergency EIDL program is a separately codified newly created program temporarily expanding the class of eligible entities to which the SBA is authorized and directed to make EIDL loans under Section 7(b)(2) of the SBA Act.

44.     In 15 U.S.C. §636(a)(36)(D) Congress provided that for purposes of the PPP "[d]uring the covered period, in addition to small business concerns, any business concern ... shall be eligible to receive a covered loan" if the business employs less than 500 employees or, "if applicable," less than "the size standard in number of employees established by the Administration for the industry in which the business concern ... operates." 15 U.S.C. §636(a)(36)(D)(i)(I)-(II)

45.     For the Emergency EIDL Grants, however, the CARES Act at §1110 provides that "[d]uring the covered period" (defined at 15 U.S.C. §9009(a)(1) to be January 31 to December 31, 2020) "in addition to small business concerns, private nonprofit organizations, and small agricultural cooperatives" (to which Section 7(b)(2) already authorizes the SBA to make EIDL loans) "an eligible entity shall

be eligible for a loan made under [Section 7(b)(2)]." 15 U.S.C. § 9009(b) The

CARES Act defines "eligible entity" for the purposes of this new program to

include (1) a business with no more than 500 employees; (2) any individual who

operates under a sole proprietorship, with or without employees, or as an

independent contractor; (3) a cooperative with no more than 500 employees, (4) an

employee stock ownership plan with no more than 500 employees or (5) a tribal

small business concern with not more than 500 employees. 15 U.S.C. §9009(a)(2).

46.     For purposes of Emergency EIDL loans made in response to the COVID-19

disaster during the covered period ("covered EIDL loans"), the CARES Act in

essence eliminates the eligibility restriction imposed by the SBA Act with respect

to traditional section 7(b) loans: it waives, for loans up to $200,000, the SBA's rule

requiring principals to provide personal guarantees, the requirement of presence in

a disaster area, and the requirement that applicants be unable to acquire credit

elsewhere. *Id*. §9009(c). The Act also provides that the SBA shall not require

applicants to submit tax returns for purposes of evaluating their creditworthiness.

*Id*. §9009(d). Finally, the Act authorizes emergency advances of up to $10,000 to

applicants who meet the definition of  "eligible entities" "to address any allowable

purpose for a loan made under [Section 7(b)(2)]." *Id*. §9009(e).

### C. SBA REGULATIONS APPLICABLE TO TRADITIONAL EIDL LOANS

47.     In 13 C.F.R. §123.301(b) Defendant SBA restrictively defined eligibility for

traditional EIDL loans: "Economic injury disaster loans are available only if you

were a small business (as defined in part 121 of this chapter) or a private non-profit

organization when the declared disaster commenced, you and your affiliates

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS
ACTION* - 11

and principal owners (20% or more ownership interest) have used all reasonably available funds, and you are unable to obtain credit elsewhere (see § 123.104)". In 13 C.F.R. §123.301, Defendant SBA further restricted eligibility for traditional EIDL loans: "Your business is not eligible for an economic disaster loan if you (*or any principal of the business*) fits into any of the categories in §§123.101 and 123.201 or fits within eight exceptions." (emphasis added)

48.

### D. CARES ACT, SBA ACT, AND DEFENDANTS' TREATMENT OF FOREIGN PERSONS

1. <u>CARES ACT</u>

49.    The CARES Act does not impose any citizenship requirements on eligible entity-borrowers, but it prohibits the use of loans for "any compensation of an employee whose principal place of residence is outside of the United States."

50.    At the same time the CARES Act, while creating a one-time refundable tax credit of $1,200 per eligible individual ($2,400 for married taxpayers filing a joint tax return) and $500 per eligible child, specifically provides that the tax credit is

not available to "nonresident aliens"[1] and requires that taxpayers provide a social security number.[2]

51.    No such restriction in included anywhere else in the Act.

    2. <u>The Small Business Administration Act (SBA Act)</u>

52.    Congress enacted the Small Business Act in 1953 to "aid, counsel, assist, and protect, insofar as possible, the interests of small-business concerns. . . ." 15 U.S.C. § 631(a).

53.    In 15 U.S.C. §632(a) Congress provided a general definition of the term "small business concern" as an enterprise "which is independently owned and operated and which is not dominant in its field of operation" and provided that the Administrator of the SBA can "specify detailed definitions or standards by which a business concern may be determined to be a small business concern for the purposes of this chapter or any other Act." Congress limited the discretion of Defendant Carranza in 15 U.S.C. §632(a)(2)(C) both procedurally and substantively.

―――――――――――――――

1.  Nonresident aliens are non-U.S. citizens or nationals that have not passed the Internal Revenue Service's "green card test" or "substantial presence test." Internal Revenue Service (IRS), *Determining Alien Tax Status*, at https://www.irs.gov/individuals/international-taxpayers/

2   Social Security numbers (SSN) are only issued to U.S. citizens, lawful permanent residents, noncitizens with a work authorization document (work permit) or noncitizens who are work authorized incident to non-immigrant status.

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 13

54.     Congress did not define or limit the term "small business concern" with regard to United States citizenship. Congress specifically included citizenship as criteria in defining HUBZone small business concerns -- also regulated by the SBA Act -- by requiring that they meet the general definition of "small business concern" and that they be at least 51 percent owned and controlled by United States citizens.

       3.     <u>SBA Regulations</u>

55.      In 13 C.F.R. §121.105 Defendant SBA defines the term "business concern or concern":

(a)(1) Except for small agricultural cooperatives, a business concern eligible for assistance from SBA as a small business is a business entity organized for profit, with a place of business located in the United States, and which operates primarily within the United States or which makes a significant contribution to the U.S. economy through payment of taxes or use of American products, materials or labor.

[…]

(b) A business concern may be in the legal form of an individual proprietorship, partnership, limited liability company, corporation, joint venture, association, trust or cooperative, *except that where the form is a joint venture there can be no more than 49 percent participation by foreign business entities in the joint venture*. (emphasis added)

56.     The SBA published additional small business definitions in 13 C.F.R. § 121.201.

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 14

57.    At 13 C.F.R. §120.100 Defendant SBA provides notice to potential applicants and the public that to be eligible for an SBA business loan, a small business applicant must: (a) be an operating business (except for loans to Eligible Passive Companies); (b) be organized for profit; (c) be located in the United States; (d) be small under the size requirements of part 121 of this chapter (including affiliates); and (e) be able to demonstrate a need for the desired credit.

58.    Defendant SBA regulates which applicants are *ineligible* for SBA business loans by excluding 18 categories of businesses. In 13 C.F.R. §120.110(e) the regulations provide that businesses "located in a foreign country" are categorically ineligible and in a parenthetical states that "businesses in the U.S. owned by aliens may qualify…"

59.    In 1998 the SBA issued a proposed rule to amend the EIDL program to "codify the SBA's existing policy of using the same ineligibility criteria for its economic injury disaster and business loan program[s]." 63 Fed. Reg. 20140. This proposed rule incorporated 13 C.F.R. §123.201 and 13 C.F.R. §123.101 to be applicable to EIDL loans. Ultimately, the SBA issued a final rule, located at 63 Fed. Reg. 46643 and codified in part at 13 C.F.R. §123.301, making the eligibility criteria found at 13 C.F.R. §123.201 applicable to traditional EIDL loans. No restrictions based on citizenship or immigration status were included as a ground for ineligibility.

60.    In order for an entity to apply for an EIDL loan, including a loan under the Emergency EIDL program, an entity must complete mandatory forms.

61.    The SBA's mandatory application for an EIDL loan includes the following language: The Applicant understands that the SBA is relying upon the self-

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 15

certifications contained in this application to verify that the Applicant is an eligible entity to receive the advance, and that the Applicant is providing this self-certification under penalty of perjury pursuant to 28 U.S.C. §1746 for verification purposes. * * * Applicant must review and check all of the following (if Applicant is unable to check all of the following, Applicant is not an Eligible Entity): * * *

62.    Nowhere in the mandatory application did Defendants provide notice that non-citizens who are not in possession of a green card or approved adjustment of status application are categorically ineligible for Emergency EIDL loans.

63.    After the implementation of the Emergency EIDL program Administrator Carranza implemented a rule and notified applicants as follows:

> On March 29, 2020, following the passage of the CARES Act, the SBA provided small business owners and non-profits impacted by COVID-19 with the opportunity to obtain up to a $10,000 Advance on their Economic Injury Disaster Loan (EIDL). The Advance is available as part of the full EIDL application and will be transferred into the account you provide shortly after your application is submitted. To ensure that the greatest number of applicants can receive assistance during this challenging time, the amount of your Advance will be determined by the number of your pre-disaster (i.e., as of January 31, 2020) employees. The Advance will provide $1,000 per employee up to a maximum of $10,000.

**E. CDC'S TEMPORARY EVICTION MORATORIUM**

64.    To prevent the further spread of the coronavirus, on 4 September 2020 the Centers for Disease Control and Prevention (CDC) issued an order temporarily halting certain residential evictions for nonpayment of rent. *See* Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19, 85 FR 55292 (4 Sept. 2020). Unless the CDC order is extended, changed, or ended, if a residential

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 16

tenant meets certain conditions, a landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action is prohibited from evicting or removing from possession any covered person through 31 December 2020. Because of federal and state eviction moratoriums small landlords like Plaintiff STAM have been particularly impacted by the economic downturn and need financial assistance to withstand foreclosure and defaults.

## F.    SBA'S CARES ACT REGULATIONS

65.    SBA Promulgated Interim Final Rules to Implement the CARES Act.

66.    As required by the PPP provisions of the CARES Act, SBA first promulgated an interim final rule on 2 April 2020. Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,811.

67.    SBA posted additional interim final rules on its PPP loans on April 3, 15, 24, 28, and 30, and May 5, 8, 19, and 26, 2020, and the Department of the Treasury posted an additional interim final rule on 28 April 2020.[3]

_____

[3] Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,811; Business Loan Program Temporary Changes; Paycheck Protection Program, 85 Fed. Reg. at 20,817 (Apr. 15, 2020) (to be codified at 13 C.F.R. pt. 121); Business Loan Program Temporary Changes; Paycheck Protection Program-Additional Eligibility Criteria and Requirements for Certain Pledges of Loans, 85 Fed. Reg. at 21,747 (Apr. 20, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program Requirements-Promissory Notes, Authorizations, Affiliation, and Eligibility, 85 Fed. Reg. at 23,450 (Apr. 28, 2020) (to be codified at 13 C.F.R. pt. 120, 121); Small Business Administration Business Loan Program Temporary Changes;

68.    None of the regulatory changes tied eligibility for EIDL Emergency loans to immigration status, nor did any regulatory change provide that loan applications could not be amended or supplemented.

### G. SBA'S UNLAWFUL DENIAL OF EIDL EMERGENCY LOANS TO PLAINTIFFS.

_____

Paycheck Protection Program—Additional Criterion for Seasonal Case Employers, 85 Fed. Reg. at 23,917 (Apr. 30, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Disbursements, 85 Fed. Reg. at 26,321 (May 4, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Corporate Groups and Non-Bank and Non Insured Depository Institution Lenders, 85 Fed. Reg. at 26,324 (May 4, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program Nondiscrimination and Additional Eligibility Criteria, 85 Fed. Reg. at 27,287 (May 8, 2020) (to be codified at 13 C.F.R. pt. 113, 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Requirements-Extension of Limited Safe Harbor With Respect to Certification Concerning Need for PPP Loan Request, 85 Fed. Reg. at 29,845 (May 19, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Loan Increases, 85 Fed. Reg. at 29,842 (May 19, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Eligibility of Certain Electric Cooperatives, Fed. Reg. at 29,847 (May 19, 2020) (to be codified at 13 C.F.R. pt. 120); Business Loan Program Temporary Changes; Paycheck Protection Program-Treatment of Entities With Foreign Affiliations, Fed. Reg. at 30,835 (May 21, 2020) (to be codified at 13 C.F.R. pt. 120, 121); Business Loan Program Temporary Changes; Paycheck Protection Program-Second Extension of Limited Safe Harbor With Respect to Certification Concerning Need for PPP Loan and Lender Reporting, 85 Fed. Reg. at 31,357 (May 26, 2020) (to be codified at 13 C.F.R. pt. 120).

69.     As a direct and proximate cause of COVID-19, the related executive orders, and the economic downturn, PTI, SOS, AGI, and STAM have suffered significant business losses.

70.     PTI applied for an EIDL Emergency loan in order to mitigate financial losses and stabilize its business in the face of restrictions on imports and the reduction of available cargo for transportation.

71.     On 2 April 2020 Mr. Anguelov submitted PTI's application for an EIDL Emergency loan by completing the online application through the designated SBA portal.

72.     Defendant accepted the application and assigned it processing number 3600516367.

73.     PTI is fully qualified under the text of the CARES Act, the SBA act, and the applicable regulations to receive an EIDL advance and EIDL Emergency loan.

74.     PTI intended, and still intends, to use the funds from an EIDL Emergency loan in accordance with the provisions of the CARES Act.

75.     The electronic EIDL Application Form that Mr. Anguelov completed included several questions. (A copy of a blank EIDL application is attached as Exhibit 1). Central to this lawsuit is a question included in the 'owners information section': "U.S. Citizen ___Yes or ___ No". Mr. Anguelov marked "no" as he is not a United States citizen but is an employment authorized non-citizen with a pending application for a green card.

76.     On 1 June 2020 Craig Black, an employee of Defendant SBA, sent Mr. Anguelov an email as follows: "We are reviewing your SBA Covid-19 application referenced above and need some additional clarification/information. Your

application indicates that you are not a U.S. Citizen. Please clarify your current citizenship/immigration status. If you have a Permanent Resident Card, please provide a clear copy (**front and back**) of the card, and reply to this email asap. You can attach a photo or scan copy to this email."

77.     Mr. Anguelov called and spoke with a representative of Defendant SBA. Mr. Anguelov explained that he did not have a Permanent Resident Card but had a valid work permit issued by USCIS based on his pending application for adjustment of status. The representative informed Mr. Anguelov that she had updated the information and that the application would be processed.

78.     On 5 June 2020 Mr. Anguelov received another email from Mr. Black as follows: "I have not received a reply to my prior email. If you wish to continue with your loan application, please respond as soon as possible so that we may keep your loan in processing."

79.     Mr. Anguelov sent an email to the SBA with a copy of the front and back of his employment authorization attached.

80.     On 5 June 2020 Mr. Black acknowledged receipt of the email and attachment: "Thank you for the information. I have updated the application and moved it forward into processing for review."

81.     A few days later Mr. Anguelov received a letter dated 5 June 2020 in which Defendants informed Mr. Anguelov and PTI that "[u]nfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below.

**Unverifiable Information**

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 20

During the loan underwriting process there were one or more items that were reviewed that caused the SBA to question the validity of certain information you submitted as part of your application." The letter provided no further information or explanation regarding the alleged "unverifiable information". A copy of the denial letter is attached as Exhibit 2.

82.    Mr. Anguelov did receive a $1,000.00 EIDL advance grant.

83.    On or about 9 April 2020 Mr. Dinkov submitted an application on behalf of AGI for an EIDL Emergency loan by completing the online application through the designated SBA portal.

84.    Defendant accepted the application and assigned it processing number 3304213233.

85.    AGI is fully qualified under the text of the CARES Act, the SBA act, and the applicable regulations to receive an EIDL advance and EIDL Emergency loan.

86.    AGI intended, and still intends, to use the funds from a EIDL Emergency loan in accordance with the provisions of the CARES Act.

87.    The electronic EIDL Application Form that Mr. Dinkov completed included several questions, one of which asked the following: "U.S. Citizen ___Yes or ___ No". Mr. Dinkov marked "no" as he is not a United States citizen but an individual with a pending application for EB5 employment creation under 8 U.S.C. § 1153(a)(5) (7.1 % of worldwide immigrant visas are reserved to qualified immigrants seeking to enter the United States for the purpose of engaging in a new commercial enterprise in which the noncitizen has invested, or is actively in the process of investing, capital in an amount not less than $1,000,000.00 and which

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 21

will benefit the United States economy and create full-time employment for not fewer than 10 United States citizens or qualified non-citizens.)

88.    On 23 June 2020, Tatyann Small, an employee of Defendant SBA, sent Mr. Dinkov an email in which she informed him as follows: "In order to move your file forward we are requesting the owner living in the U.S. submit proof they are a qualified alien within 7 days or the loan will be declined. An example of providing proof would be a front and back copy of your permanent resident card. Please let me know if you have any questions or concerns."

89.    Mr. Dinkov responded with an email in which he pointed out that "the CARES act does not condition or restrict eligibility for EIDL or PPP loans on the immigration status of the owners of the company, I respectfully request that you approve the loan."

90.    On 24 June 2020 Ms. Small responded as follows: " Unfortunately, we would need the requested documentation in order to move forward with any approval. Our eligibility requirement for the individual applying for this loan is to be a US Citizen or Perm res alien in order to receive these loans. Explaining your citizenship status would properly abet your current situation."

91.    Mr. Dinkov inquired if a copy of his I-94 form would be acceptable, to which Ms. Small responded in the affirmative. Mr. Dinkov sent a copy of his I-94 form and a copy of his Illinois driver's license.

92.    On 25 June 2020 Ms. Small responded via an email: "Received! Your deal was moved forward to the next stage. Please standby for an email from SBA on the progress of your loan application. We also have an dedicated customer service line

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 22

for any questions relating to your loan status at 800-366-6303. Have a wonderful week!"

93.    After receiving the email Mr. Dinkov logged into the SBA portal and saw that the loan application made on behalf of AGI had been declined.

94.    Mr. Dinkov sent an email inquiring about the reason for the denial of the loan and Ms. Small responded: "Unfortunately I'm not sure of the reason, please contact customer service at 800-366-6303 to get more information on this situation."

95.    Mr. Dinkov's efforts to obtain further information by calling the SBA customer service dedicated phone number proved fruitless: he spent hours on hold only to be told that no further information was available.

96.    On or about 29 June 2020 Mr. Dinkov received a letter dated 25 June 2020 in which Defendants informed Mr. Dinkov and AGI that "[u]nfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below. We are pleased that we were able to give you an EIDL Advance under this program even though we are unable to make you a loan. We hope the Advance funds will provide some relief in these difficult circumstances.

**Unverifiable Information**

During the loan underwriting process there were one or more items that were reviewed that caused the SBA to question the validity of certain information you submitted as part of your application. A copy of the denial letter is attached as Exhibit 3.

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 23

97.    Mr. Dinkov also submitted an application on behalf of SOS for an EIDL Emergency loan by completing the online application through the designated SBA portal.

98.    Defendant accepted the application and assigned it processing number 3305150549.

99.    SOS is fully qualified under the text of the CARES Act, the SBA act, and the applicable regulations to receive an EIDL advance and EIDL Emergency loan.

100.    SOS intended, and still intends, to use the funds from an EIDL Emergency loan in accordance with the provisions of the CARES Act.

101.    In the electronic EIDL Application Form Mr. Dinkov stated that he is not a U.S. Citizen.

102.    Mr. Dinkov sent a copy of his I-94 form, his Illinois Driver's License, and a copy of his I-797C notice of action showing the pendency of his I-526 Petition for Alien Investor.

103.    On or about 16 July 2020 Mr. Dinkov received the following email from Scott Jackson, a 'loan processor' and 'contractor' for the SBA:

> I am sorry for the impact COVID-19 is having on your business! Please respond to the following at your earliest opportunity in order to help get the application to the next stage. On your application you indicated you are not a US citizen. Therefore, one of the following will be needed:
>
> 1. Permanent Resident Card (Except expired conditional cards) (Form I-151, formerly known as the Alien Registration Card or "Green Card")
>
> 2. Resident Alien Card (some may not have an expiration date)

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 24

3. Expired Conditional Permanent Resident Card if accompanied by a copy of Form I-797 reciting approval of a petition to remove the conditions and/or approving a new petition for Permanent Resident status

4. FORM I-797 NOTICE OF ACTION which recites approval of a petition for Permanent Resident Status.

104.    On 23 July 2020 Mr. Jackson sent another email to Mr. Dinkov in which he informed him that unless he received "the requested documentation by the end of the day 7/23/20" he "will have to decline the loan".

105.    Since Mr. Dinkov is not yet a permanent resident and his petition remains pending he was unable to provide any of the requested documentation.

106.    On or about 30 July 2020 SOS received a letter dated 23 July 2020 in which Defendants informed Mr. Dinkov and SOS that "[u]nfortunately, although we have made every effort to approve your loan request, we are unable to offer you a Economic Injury Disaster Loan (EIDL) for the reason(s) described below. We are pleased that we were able to give you an EIDL Advance under this program even though we are unable to make you a loan. We hope the Advance funds will provide some relief in these difficult circumstances.

**Unverifiable Information**

During the loan underwriting process there were one or more items that were reviewed that caused the SBA to question the validity of certain information you submitted as part of your application. A copy of the denial letter is attached as Exhibit 4.

107.    Defendants have provided no information, notice, or explanation on any application form, instruction form, or in any information shared with the public

that Defendants implemented the CARES Act to render businesses owned by individuals who are not United States citizens or Legal Permanent Residents categorically ineligible for an EIDL Emergency loan notwithstanding the business owner's otherwise lawful, employment authorized immigration status.

108.    On or about 30 March 2020 Mr. Steven Mazer, the managing member of STAM, submitted an application on behalf of the company for an EIDL Emergency loan by completing the online application through the designated SBA portal.

109.    Defendant accepted the application and assigned it processing number 3600135811.

110.    STAM is fully qualified under the text of the CARES Act, the SBA act, and the applicable regulations to receive an EIDL advance and EIDL Emergency loan.

111.    STAM intended, and still intends, to use the funds from an EIDL Emergency loan in accordance with the provisions of the CARES Act.

112.    STAM realized that the real estate losses and the number of employees/members stated on the original application were incorrect. STAM sought to amend the application online, but the SBA portal established by Defendants did not allow for amendments to pending applications. STAM made multiple unsuccessful attempts to contact the SBA by phone to amend its application. Unable to amend either online or by phone, on 15 April 2020 STAM submitted a second application (3601294301).

113.    On or about 4 June 2020 STAM received an email from Defendant SBA that it had received multiple applications from the same business. Defendant SBA informed STAM that the earliest application would continue to be processed but

that the second application (3601294301) had been withdrawn from active consideration.

114. On 8 June 2020 Mr. Mazer logged into the SBA web portal and saw that STAM had been determined to be eligible for an EIDL Emergency loan for up to $4,000.00. STAM also received a $1,000.00 EIDL grant. The loan amount was significantly lower than the revised rental loss of $15,175 and did not account for the four employees/members of STAM as reflected in the second submitted application withdrawn by the SBA.

115. STAM made multiple attempts to contact the SBA at their designated customer service line.

116. On 11 June 2020 Mr. Mazer was finally able to speak to a Tier 2 rep, CS Agent #6907, who accessed the original application (3600135811) and inputted the requested changes: increasing the number of employees from one to four and the rental losses from $4,915 to $15,175. CS Agent #6907 advised STAM to wait for the processing of the revised application.

117. On 13 June 2020 STAM received an email from the SBA advising that the company had not taken the next step to complete the EIDL application. The email concluded as follows: "These steps are necessary to continue to process your application. Failure to complete these steps will result in your application being withdrawn."

118. After logging into the portal and confirming that the changes inputted by CS Agent #6907 during the 11 June 2020 call were not yet reflected, STAM believed that it needed to wait for the system to be updated.

119.   On 29 June 2020 STAM received the same generic email from the SBA advising the company that it had not taken the next step to complete the EIDL application.

120.   During the first week of July Mr. Mazer made at least 10 calls to the SBA, spending numerous hours on hold only to be disconnected before reaching a live operator.

121.   On or about 9 July 2020 STAM was successful in reaching SBA representative Diana LNU, who confirmed that both the rental loss amount and the number of employees/members had been updated in Defendants' system on the first application. Diana informed STAM that the EIDL application had been in "review status" since 17 April 2020 and told STAM that she added a note in the system to "move it forward".

122.   On 11 July 2020 STAM received an email from the SBA that the status of its application had been updated and directed the applicant to log into the system and complete the next step.

123.   The SBA system, however, showed no changes in the application.

124.   Between 11 July 2020 and 16 July 2020 STAM made several unsuccessful attempts to reach an SBA representative and discuss the application status.

125.   On 16 July 2020 Mr. Mazer was finally able to reach Agent #1005 who informed him that the second application was considered a duplicate and that the first application had been switched into the system as "not interested". Agent #1005 told Mr. Mazer that he would forward a request to reopen the loan application.

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 28

126.  On 16 July 2020 Agent #1005 emailed instructions to Mr. Mazer detailing how to request the increased loan amount, directing STAM to send an email with the subject line of the loan number and the word "INCREASE" and to include the following information: (1) completed SBA form 4506-T, completing items 1-4, check attestation box and include handwritten signature; (2) most recent federal business tax return; (3) IRS Form 3502 if COGS or revenue amount has changed; and (4) letter/statement explaining the request for a loan increase.

127.  On 17 July 2020 STAM received a letter dated 15 July 2020 denying the loan application:

> Unfortunately, although we have made every effort to approve your loan request, we are unable to offer you a  Economic Injury Disaster Loan (EIDL) for the reason(s) described below. We are pleased that we were able to give you an EIDL Advance under this program even though we are unable to make you a loan. We hope the Advance funds will provide some relief in these difficult circumstances.
>
> **Applicant requests a withdrawal or fails to proceed**
>
> At your request or due to inactivity, we have withdrawn your application from active consideration. You have the right to request reacceptance of your withdrawn application. A copy of the letter is attached as Exhibit 5.

128.  On 24 July 2020 STEM received a voicemail from the SBA informing the company that there are "additional steps" that needed to be completed for the processing of the EIDL loan. The voicemail directed Plaintiff to log into the SBA portal and to "select the requested amount and to submit the loan for final approval."

129.    After logging into the SBA portal STAM discovered that its first application (#3600135811) showed a status of "DECLINED" along with the statement: "your application has been withdrawn". STAM's second application (#3601294301) showed a status of "DECLINED, $0" and indicated that "decision details will be communicated by email…"

130.    On 31 July 2020 Mr. Mazer was able to reach SBA agent Nancy LNU who confirmed that the STAM application had been withdrawn because the company "failed to proceed" and that no option to reopen or reactivate exists.

131.    As of the filing of this complaint the portal shows the same information as in paragraph 129.

132.    To date none of the named Plaintiffs has received an Emergency EIDL loan. Plaintiff STAM has not received an Emergency EIDL grant for three of its four members/employees.

133.    Each of the named Plaintiffs filled out the online SBA application, and each Plaintiff submitted the necessary documents to establish compliance with the terms of the CARES Act. Plaintiff STAM made multiple attempts to amend its original application upon the discovery of errors.

**CAUSES OF ACTION**

**COUNT I: Agency Action in excess of or violation of Statutory Text.**
**(By all named Plaintiffs and the Class against All Defendants)**

134.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 132 above.

135.   Through the CARES Act, and specifically the Emergency EIDL Loan and Grants program, Congress sought to ensure that emergency relief is made available to small businesses that have been negatively impacted by the COVID-19 pandemic. This relief was not intended to exclude duly registered corporations and limited liability companies because of the immigration status of their individual owners residing in the United States or to penalize applicants because of clerical or good faith mistakes during the application process. Rather, the emergency relief was intended to provide needed assistance to small businesses that keep people employed and support the essential services that benefit the entire country during this crisis.

136.   Although the SBA recognizes that "the intent of the [CARES] Act is to provide relief to America's small businesses expeditiously" and to "provide immediate assistance to individuals, families, and businesses affected by the COVID-19 emergency…" 85 Fed. Reg. at 20,811-12, the SBA's implementation of the CARES ACT runs counter to that purpose and beyond the authority delegated to it by Congress. In passing the CARES Act Congress did not delegate to the SBA the authority to determine who is and who is not morally worthy of a PPP loan. *DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020) ("[T]he Act's specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation. That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible and, in doing so, does not lead to an "absurd result" as the SBA claims. Finally, by specifying 'any business concern,' Congress made clear

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 31

that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances.")

137.    Even had Congress delegated regulatory power to the SBA, the implementation of the CARES Act by Defendants to exclude categorically any non-citizen owner unless he is a green card holder or approved for such status is an arbitrary and capricious exercise of that power. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (describing arbitrary-and-capricious agency action as when "the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.")

138.    Like many small businesses impacted by this historic economic downturn, Plaintiffs need financial assistance to continue business operations.

139.    The text of the CARES Act is clear and unambiguous regarding which businesses are eligible for EIDL loans.

140.    Because the CARES Act clearly defines which businesses are eligible for EIDL loans, the SBA lacked authority to implement a categorical policy regarding the business owner's 'immigration status' and a *de facto* policy prohibiting amendments to filed applications.

141.    The 'immigration status' and 'no amendment' policies impermissibly limit the scope of businesses eligible for EIDL loans. By instituting these policies Defendants have acted beyond the specific authority Congress delegated to the SBA and its Administrator through the CARES Act. *City of Arlington, Tex. v.*

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 32

*FCC*, 596 U.S. 290, 307 (2013) (explaining that a rule that exceeds an agency's statutory grant of authority is without legal basis and, therefore, is unlawful.)

142.    The SBA's categorical 'immigration status' and 'no amendment' policies have resulted in Plaintiffs' ineligibility for EIDL loans that Plaintiffs should have qualified for under the plain text of the CARES Act.

143.    As a direct result of SBA's implementation of the categorical 'immigration status' and 'no amendment' policies, Plaintiffs and their employees have suffered severe economic injuries and risk financial ruin. Absent a court order Plaintiffs will remain unable to obtain the EIDL loans Congress provided for in the CARES Act.

144.    The funds allocated for EIDL loans are being granted on a first-come, first-served basis until the SBA dispenses the funds. 13 C.F.R. §120.

145.    Plaintiffs have neither the avenue nor the time to obtain relief through administrative channels since they challenge categorical rules implemented by Defendants rather than individual loan decisions. Plaintiffs seek the urgent aid of this Court to obtain relief while EIDL funds still remain.

146.    Absent EIDL loans Plaintiffs may be forced to make painful financial decisions that will severely impact valued employees and/or jeopardize their ability to continue operations, causing permanent damage to businesses that have provided work, critical services, and housing to American families and communities.

147.    Plaintiffs have been damaged and will continue to be damaged by Defendants' conduct. No adequate remedy at law is available that could compensate Plaintiffs for their damages.

148.    Plaintiffs are entitled to declaratory and injunctive relief ending Defendants' implementation of the challenged categorical 'immigration status' and 'no amendment' policies. *eBay Inc. v. MercExchange, L.L.C*., 547 U.S. 388, 391 (2006) (setting out the elements for permanent injunctive relief).

**COUNT II: Invalid Agency Action**
   **(By Plaintiffs AGI, SOS, and PTI and subclass A against All Defendants)**

149.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 132 above.

150.    The SBA is an agency subject to the provisions of the Administrative Procedure Act. (the "APA") 5 U.S.C. §701(b)(1).

151.    A court reviewing an agency action "shall hold unlawful and set aside" any action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. §706(2)(C).

152.    The text of the CARES Act and the SBA Act are clear and unambiguous as to which businesses are eligible for EIDL loans.

153.    Because the statutory text is clear and unambiguous, the SBA lacked authority to promulgate regulations that restricted which corporate businesses are eligible for EIDL loans based on the immigration status of their individual owners/investors. *DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020) ("[T]he Act's specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation. That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible and, in doing so, does not lead to an "absurd result" as the SBA claims. Finally, by specifying 'any business concern,' Congress made

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 34

clear that the SBA's longstanding ineligibility rules are inapplicable given the current circumstances."); *DV Diamond Club*, 2020 WL 2315880, at *1 (E.D. Mich. May 11, 2020) ("SBA's PPP Ineligibility Rule is invalid because it contravenes the PPP."); *Camelot Banquet Rooms*, 2020 WL 2088637, at *5, *7 (W.D. Wis. May 1, 2020) ("[O]ne can find nothing in either the CARES Act or the Small Business Act to suggest that Congress wanted to exclude the plaintiffs from the PPP because of the nature of their business … given Congress's clear intent to extend PPP loans to all small businesses affected by the pandemic … it seems highly unlikely that Congress intended the SBA to apply its exclusion to the PPP.")

154.   Congress did not delegate authority to the SBA, either through the CARES Act or the SBA Act, to create classes of persons to exclude from EIDL loans.

155.   Even if the statutory text was ambiguous—which it is not—the 'immigration status' rule would still be unlawful.

156.   SBA's 'immigration rule' is "contrary to the statute" and/or not in accord with the factors and criteria listed in the Act for defining the scope and nature of restrictions imposed on entities and/or small business concerns and is thus not entitled to deference. *United States v. Mead Corp*. 533 U.S. 218, 227 (2001). The SBA is not entitled to deference because the 'immigration status' rule is not "a reasonable policy choice for the agency to make." *Chevron, U.S.A., Inc. v. Nat'l Resources Def. Council, Inc*., 467 U.S. 837, 845 (1984).

157.   More generally, administrative agencies are not entitled to unrestricted deference. Article III of the Constitution vests "the judicial power of the United States" in the courts and creates the judicial office held by "[t]he judges, both of the Supreme Court and inferior courts." U.S. CONST. art. III, §1. The judicial

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 35

power includes the authority to decide cases and controversies; a judge's office includes a duty to exercise independent judgment in the interpretation and application of law in each case. *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803) ("It is emphatically the duty of the Judicial Department to say what the law is. Those who apply the rule to particular cases must, of necessity, expound and interpret that rule.")

158.    The judicial office requires judges to "exercise independent judgment in accord with the law." PHILIP HAMBURGER, IS ADMINISTRATIVE LAW UNLAWFUL? 173 (2014).

159.    Judicial deference to the agency's interpretation would display bias towards the SBA, the government litigant in this case. *Marshall v. Jerrico, Inc*., 446 U.S. 238, 242 (1980) (explaining that a neutral judiciary "safeguards the two central concerns of procedural due process, the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individuals in the decisionmaking process").

160.    Plaintiffs' reading of the CARES Act is consistent with the intent of Congress to make EIDL loans available to all business concerns that meet the criteria set out in the CARES Act. Pub. L. No. 116-136, §1102(a)(2)(F)(i), 134 Stat. 281 (2020); *DV Diamond Club*, 2020 WL 2988528, at *2 (6th Cir. May 15, 2020).

161.    The "Immigration Status" policy was implemented beyond the statutory authority of the SBA to promulgate rules to administer disaster loans to businesses nor has the agency explained the need for such a rule and its reasoning. 5 U.S.C. § 706(2)(C).

162.    As a direct and proximate result of the "Immigration Status" policy, Defendants and their agents have caused Plaintiffs and their employees substantial harm. Defendants' unlawful policy has jeopardized the livelihoods of employees and the viability of Plaintiffs' businesses.

163.    Plaintiffs have been damaged and will continue to be damaged by Defendants' conduct. No adequate remedy at law is available that could compensate Plaintiffs for their damages.

164.    Plaintiffs are entitled to declaratory and injunctive relief invalidating and restraining enforcement of the "Immigration Status" policy.

**COUNT III: The Categorical "Immigration Status" and "No Amendment" Policies implemented by Defendant SBA and Administrator Carranza are Arbitrary and Capricious.**
**(By all named Plaintiffs and the Class against Defendants SBA and Carranza)**

165.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 132 above.

166.    The SBA is an agency subject to the provisions of the Administrative Procedure Act (the "APA"). 5 U.S.C. §701(b)(1).

167.    The SBA and Administrator Carranza have implemented the CARES Act in a manner that categorically excludes allowance of Emergency EIDL loans to corporate businesses based on the immigration status of individual owners. Defendants have also implemented the CARES Act in a manner that categorically prohibits an applicant from amending a loan application even if the request to amend was timely, based on good faith or clerical error, and accompanied with

supporting documents. Defendants have thus suspended the CARES Act EIDL

loan program in part through policies, procedures, and practices that run counter to

the text and purpose of the CARES Act.

168.    The SBA's implementation of the CARES Act through the "Immigration

Status" and "No Amendment" policies constitutes final agency action within the

meaning of the APA. *Bennett v. Spear*, 520 U.S. 154 (1997).

169.    A court reviewing agency action must hold the action unlawful and set it

aside upon finding that it is "arbitrary, capricious, an abuse of discretion, or

otherwise not in accordance with law…" 5 U.S.C. § 706(2)(A)).

170.    An agency's action "is arbitrary and capricious if 'the agency has relied on

factors which Congress has not intended it to consider, entirely failed to consider

an important aspect of the problem, offered an explanation for its decision that runs

counter to the evidence before the agency, or is so implausible that it could not be

ascribed to a difference in view or the product of agency expertise.'" *Sierra Club*

*v. U.S. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018)).

171.    Defendants' challenged policies, procedures, and practices denying attempts

to amend previously filed applications, and categorically excluding qualified

entities solely based on the immigration status of individual owners -- even when

those owners are employment authorized or permitted to develop the entities as

immigrant investors -- are arbitrary and capricious, an abuse of discretion, and not

in accordance with law, as Defendants lack the statutory authority to suspend

eligibility and adjudication of properly submitted EIDL applications by corporate

applicants.

172.    The policies, procedures, and practices identified above deprive Plaintiffs and others similarly situated of their congressionally mandated right to participate in the EIDL loan program as set forth in the CARES and SBA Acts.

173.    Defendants disregarded Plaintiffs' reliance on the plain language of the CARES and SBA Acts and the prospect of receiving needed EIDL loans. Defendants must, in addition to demonstrating that there are good reasons for the challenged policies, offer "a reasoned explanation . . . for disregarding facts and circumstances that underlay or were engendered by the prior policy." *FCC v. Fox Television*, 556 U.S. 502, 515 (2009).

174.    In implementing the challenged policies, Defendants SBA and Carranza also failed to consider all relevant facts and circumstances, including the purposes of the Emergency EIDL loans program and the interests, including reliance interests, of employment authorized non-citizen owners, investors, and U.S. corporate entities that, by virtue of their corporate structure, have independent existence from their incorporators.

175.    Defendants SBA and Administrator Carranza also failed to articulate a rational connection between any relevant facts and the choice to implement categorically the two challenged policies.

176.    Defendants SBA and Administrator Carranza's implementation of the "Immigration Status" policy towards applicants that are considered critical infrastructure businesses like Plaintiffs PTI, SOS, and AGI is also "contrary to constitutional right, power, privilege, or immunity," *id*. §706(2)(B), because it denies U.S. corporate entities the opportunity to benefit from CARES Act loans without due process of law. Defendants' action is irrational and contrary to the

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 39

interests of the United States. Plaintiffs PTI, SOS, and AGI were harmed and continued to be harmed by these unlawful acts.

177.    Because the purpose of the EIDL loans created by the CARES Act was to provide relief to nearly all small businesses negatively impacted by the pandemic, Congress included only two criteria for EIDL eligibility. By instituting the "Immigration Status" and "No Amendment" policies Defendant SBA excluded from EIDL eligibility categories of small businesses that Congress did not.

178.    The "Immigration Status" and "No Amendment" policies were not the product of the SBA's expertise, as Congress did not call on the SBA's expertise; rather, Congress instructed the SBA to administer the EIDL loans and grants based on the considerations enumerated in the CARES Act. The SBA departed from the text of the law and, in so doing, failed to consider the problem Congress sought to address. Given that Plaintiffs meet all the statutory criteria for EIDL loans, no nonarbitrary reason exists to exclude Plaintiffs SOS, PTI, and AGI from the group of "any entity" that Congress sought to benefit through EIDL. CARES Act, Pub. L. No. 116-136, §1102(a)(1)(B)(2)(D)(i), 134 Stat. 281 (2020)

179.    Whatever reasons Defendants SBA and Carranza may think justify the exclusion of certain categories of businesses from other types of 7(b) loans are inapposite here.

180.    As a direct and proximate result of the implementation and application of the two challenged policies, Defendants and their agents and contractors have caused financial harm to Plaintiffs and their employees.

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 40

181.   Plaintiffs have been damaged and will continue to be damaged by Defendants' conduct. No adequate remedy at law is available that could compensate Plaintiffs for their damages.

182.   Plaintiffs are entitled to declaratory and injunctive relief invalidating and restraining enforcement of the Criminal History Rules of the Interim Final Rule.

**COUNT IV: Unlawfully Withheld Agency Action: Defendants failed to carry out a ministerial duty.**
**(By all named Plaintiffs and the Class against Defendants SBA and Carranza)**

183.   Plaintiffs reallege and incorporate by reference the allegations contained in their Introductory Statement and paragraphs 1 through 132 above.

184.   The Administrative Procedure Act requires that a reviewing court "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1).

185.   Relief under §706(1) is like the mandamus remedy, "compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action upon a matter, without directing how it shall act.'" *Norton v. S. Utah Wilderness All.,* 542 U.S. 55, 64 (2004).

186.   The CARES Act directed Defendants SBA and Carranza to administer the EIDL loan program based on the considerations that Congress set forth in the CARES Act and the SBA Act. The Act directs the Treasury to fund the loans.

187.   Congress did not delegate any discretion to the SBA to deem classes of small businesses ineligible for reasons not contained in the CARES Act, the SBA Act, or properly promulgated regulations.

188.   The SBA's failure to administer the EIDL loan program created by the CARES Act for certain classes of small businesses—including those excluded by the "Immigration Status" and "No Amendment' policies—is an unlawfully withheld agency action.

189.   Plaintiffs are entitled to relief under 5 U.S.C. §706(1) by way of ordering Defendants to perform the nondiscretionary act of making EIDL loans available to all eligible entities as set forth in the text of the CARES Act.

**COUNT V: Agency Action Without Observance of Procedure Required by Law, 5 U.S.C. § 706(2)(D)**
**(by All named Plaintiffs, the Class Against Defendants SBA and Carranza)**

190.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 132 above.

191.   The APA requires administrative agencies like the SBA to follow notice-and-comment rulemaking procedures to promulgate substantive rules. 5 U.S.C. §553.

192.   The APA defines "rule" broadly to include "the whole or part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency and includes the approval or prescription for the future of rates, wages . . ." 5 U.S.C. §551(4).

193.   Defendants promulgated and relied upon the "Immigration Status" and "No Amendment" policies, procedures, and practices without notice-and-comment rulemaking.

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 42

194.   Defendants' policies, procedures, and practices categorically applied to all corporate businesses that have owners and/or investors that are not United States citizens or Legal Permanent Residents and to all businesses that sought to amend their applications. Defendants' policies constitute substantive rules subject to the APA's notice-and-comment requirements, because each challenged policy affirmatively eliminates the congressional mandate and nondiscretionary duty to adjudicate and render decisions on EIDL loan applications to qualified entities.

195.   Defendants' policies, procedures, and practices constitute a substantive rule: the policies create a categorical rule that applies to all affected loan applicants uniformly.

196.   Plaintiffs were harmed and continue to be harmed by these unlawful Acts.

**COUNT VI: Delayed Agency Action, 5 U.S.C. § 555(b) and (e)**
**(By Plaintiff STAM and subclass B Against Defendants SBA, Carranza, and Mnuchin)**

197.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 132 above.

198.   The APA imposes on Defendants a nondiscretionary duty "to conclude a matter presented to it" "within a reasonable time." 5 U.S.C. §555(b).

199.    Defendants failed to adjudicate Plaintiff STAM's loan application within a reasonable time. Ultimately the SBA notified Plaintiff that its application had been withdrawn.

200.   This categorical refusal to adjudicate Plaintiff's application is pursuant to

Defendants' uniform policies, procedures, and practices effectively prohibiting any amendment to an EIDL application.

201.  Defendants' policies, procedures, and practices of refusing to process a loan application when notified that the applicant sought to correct an error on the online form constitutes final agency action.

202.  Because of Defendants' policies Plaintiff STAM has been denied consideration for an EIDL grant of $1,000 for three of its employees/members and consideration for an EIDL loan.

203.  Plaintiff was harmed and continues to be harmed by these unlawful acts.

**COUNT VII: Violation of the Due Process Clause of the Fifth Amendment (By all named Plaintiffs and the Class Against all Defendants)**

204.  Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 132 above.

205.  The Due Process Clause of the Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law."

206.  Individuals and corporations must be given due process prior to any deprivation of these constitutionally protected interests.

207.  The "No Immigration" policy and "No Amendments" policy, and Defendants' implementation thereof, unconstitutionally deny Plaintiffs their constitutional rights by blocking the corporate Plaintiffs' access to CARES Act funds and preferential loans without any process, notice, or opportunity to be heard.

208.  Because Defendants provided no notice or meaningful opportunity to

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 44

comment, or establish entitlement to the benefits created by the CARES Act, Defendants' practices violate the 5th Amendment.

**COUNT VIII: Violation of the Equal Protection Clause of the U.S. Constitution**
**(By Plaintiffs AGI, PTI, and SOS and subclass A Against All Defendants)**

209.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 132 above.

210.    Defendants' refusal to fund EIDL loans to corporations where the incorporator/investor is a foreign national without permanent resident status -- but is otherwise employment authorized and/or is a lawfully present resident of the United States -- constitutes a violation of the Equal Protection Clause of the United States. Defendants' policy causes a disparate impact on Plaintiffs and is not made with a rational basis. Those corporations who were created by U. S. citizens or Legal Permanent Residents are just as likely to suffer economic harm and contract its employment force as those not owned by U. S. Citizens or Legal Permanent Residents. Defendants' policies violate the Constitution in that two groups of similarly situated corporate applicants within the same program are treated differently without a rational basis. Plaintiffs submit that Defendants' pretextual and vague policies also fail because of the Trump Administration's preexisting animus toward both legal and illegal immigration.

211.   Plaintiffs were harmed and continue to be harmed by these unlawful and discriminatory acts.

**COUNT IX: Claim for damages**
**(By all named Plaintiffs Against all Defendants)**

212.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 132 above.

213.   The CARES Act obligates Defendants to disburse loans to eligible covered entities upon establishing eligibility as specified in section 1110 of the Act and that they are not ineligible businesses as specified in 13 C.F.R. §120.110. The determination as to the amount of the loan, but not eligibility for the loan, is left to the discretion of Defendant Carranza. 15 U.S.C. §9009(b) & (c).

214.   The CARES Act also created the EIDL grant program in subsection (e) of Section 1110 of the CARES Act, 15 U.S.C. §9009(e), to benefit all applicants for Emergency EIDL grants. A grant agreement is a legally binding contract between the federal agency and the primary grant recipient. The Act obligates Defendants to offer each eligible entity the option to request a grant; the eligible entity accepts the offer of the grant by performing the condition precedent: the filing of an application.  The Act's grant agreement is a legally binding contract between the federal agency and the primary grant recipient.

215.   After each Plaintiff submitted its respective EIDL application Defendants SBA and Carranza caused each to receive an email communication in which Defendants promised as follows:

> On March 29, 2020, following the passage of the CARES Act, the SBA provided small business owners and non-profits impacted by COVID-19 with the opportunity to obtain up to a $10,000 Advance on their Economic Injury Disaster Loan (EIDL). The Advance is available as part of the full

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 46

EIDL application and will be transferred into the account you provide shortly after your application is submitted. **To ensure that the greatest number of applicants can receive assistance during this challenging time, the amount of your Advance will be determined by the number of your pre-disaster (i.e., as of January 31, 2020) employees. The Advance will provide $1,000 per employee up to a maximum of $10,000.**

216.   Defendants have failed to disburse funds as mandated by Congress. Defendants denied EIDL loans to Plaintiffs on impermissible grounds, and Defendants' 'No Amendment' policy deprived Plaintiff STAM of receiving the full amount of the grant to which it is entitled.

217.   As a direct and proximate cause of Defendants' failure to perform its statutory and contractual obligations Plaintiffs have suffered damages in an amount to be determined by the trier of fact.

218.   Plaintiffs have also incurred investigative fees, legal fees, and litigation expenses in an amount to be determined by the trier of fact.

**ALTERNATIVE CAUSE OF ACTION IN THE FORM OF MANDAMUS: DEFENDANT CARRANZA FAILED TO CARRY OUT A MINISTERIAL DUTY**

219.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 132 above.

220.   The "ancient remedy" of mandamus will apply in extraordinary circumstances "to compel the fulfillment of a duty which is ministerial, plainly and

positively ascertained, and free of doubt." *Grice v. Colvin*, 97 F. Supp. 3d 684, 705 (D. Md. 2015) (citations omitted).

221.    A writ of mandamus is proper when three elements are present: "(1) a clear right in the plaintiff to the relief sought; (2) a clear duty on the part of the defendant to do the act in question; and (3) no other adequate remedy available." *Grice*, 97 F. Supp. 3d at 705 (citation omitted).

222.    As shown above the CARES Act provided a clear right in Plaintiffs to apply and be considered for Emergency EIDL loans and grants on the specific conditions specified by Congress.

223.    The second element is satisfied when the defendant's official action is ministerial or nondiscretionary. "A ministerial duty, the performance of which may, in proper cases, be required of the head of a department, by judicial process, is one in respect to which nothing is left to discretion. It is a simple, definite duty, arising under the conditions admitted or proved to exist, and imposed by law." *Mississippi v. Johnson*, 71 U.S. 475, 498 (1866).

224.    One such ministerial duty is dispensing sums of money as directed by Congress. *Kendall v. U.S. ex rel. Stokes*, 37 U.S. (12 Pet.) 524 (1838); *Marbury*, 5 U.S. (1 Cranch) 137).

225.    Should the Court finds that Plaintiffs have no remedy under the APA, the CARES Act, and/or the U.S. Constitution as pleaded in counts 1 through 8 above, the Mandamus is Plaintiffs sole remedy.

226.    The equitable writ of mandamus is appropriate in this extraordinary circumstance because Congress directed SBA to administer EIDL loans based on the nondiscretionary criteria set forth in the CARES Act. Plaintiffs meet the criteria

and are entitled to have their loan applications processed like all other applicants who meet the criteria set by Congress. There is no adequate remedy at law by which Plaintiffs can compel Defendants to carry out their statutorily imposed ministerial duty.

227.   Plaintiffs are entitled to mandamus relief ordering Defendant Carranza to administer and process Plaintiffs' EIDL loan applications, and for Defendant Mnuchin to fund the loans, as required by the plain terms of the CARES Act, without regard to the unlawful "Immigration Status" and/or "No Amendment" policies.

## CLASS ALLEGATIONS

228.   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs bring this action in Counts One through Eight on behalf of themselves and all members of the following class (the "Class") with two subclasses:

> A corporate entity that satisfies the CARES Act definition of an "eligible entity" to receive an EIDL loan and designated such eligibility on a EIDL loan application filed with Defendant SBA but did not receive a loan as a result of having
>
> > a) identified that an owner of the entity is not a U.S. citizen (subclass A); or
> > b) attempted to amend the loan application resulting in the involuntary withdrawal of the application (subclass B).

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 49

229.    Class Identity: The above-defined Class and subclasses are readily identifiable and is one for which records should exist in the sole and exclusive possession and custody of Defendants.

230.    Numerosity: Plaintiffs do not know the exact number of Class members at this time. Plaintiffs believe the Class includes tens of thousands of corporate applicants throughout the United States. The members of the Class are so numerous that joinder of all Class members is impracticable.

231.    Common Questions Predominate: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Nearly all factual, legal, and statutory relief issues raised in this Complaint are common to each member of the Class and will apply uniformly to every member of the Class. Among the questions of law and fact common to Class members:

a. whether Defendants unlawfully implemented the "Immigration Status" and "No Amendment" policies;

b. whether Defendants' conduct denying Class members an EIDL loan violated the plain text of the CARES Act and/or the Fifth Amendment of the Constitution;

c. whether Defendants caused harm to Class members by depriving them of an EIDL loan to which they were statutorily eligible;

d. the appropriate Class-wide measure of damages;

e. whether, and in what amount, Plaintiffs and other Class members are entitled to recover court costs and attorney fees; and

f. whether Defendants' wrongful conduct is continuing to harm Plaintiffs and the Class, thus entitling the Class to declaratory and injunctive relief compelling Defendants to issue and fund their CARES Act loans/grants.

230. Typicality: Plaintiffs' claims are typical of the claims of other members of the Class because Plaintiffs and every member of the Class have suffered similar injuries as a result of the same conduct by Defendants. Plaintiffs have no interest adverse to the interests of the other members of the Class.

231. Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained able counsel. The interests of Plaintiffs are coincident with—and not antagonistic to—the interests of other Class members.

233. Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Moreover, because the damages suffered by individual members of the Class are relatively small, the expense and burden of individual litigation make it impossible for Class members to redress the wrongs done to them on an individual basis. The Class is readily definable, and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. There will be no difficulty in the management of this action as a class action.

234. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

235. Plaintiffs and other members of the Class have identical harm as a result of

COMPLAINT FOR DECLARATORY,INJUNCTIVE, ANDEQUITABLE RELIEF AND DAMAGES*CLASS ACTION* - 51

Defendants' unlawful and wrongful conduct. Absent a class action, Defendants will retain substantial emergency funds appropriated by Congress to assist putative Class members. Absent a class action, putative class members will continue to suffer serious financial harm, the impact of which will be felt by thousands of American businesses -- and the tens of thousands of citizens and non-citizens whose livelihoods depend on them.

PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for the following relief against Defendants:

1. Certify a class pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

2. Enter a judgment that Defendants violated 5 U.S.C. §§706(1) and 706(2).

3. Enter a judgment that Defendants SBA, Carranza, and Treasury are liable for damages in accordance to proof for breach of contract in the form of EIDL grants created by the CARES Act;

4. Enter a declaratory judgment pursuant to 28 U.S.C. §2201:

    A. Declaratory judgment that the "Immigration Status" and "No Amendment" Policies are contrary to law.

    B. Declaratory judgment that the "Immigration Status" and "No Amendment" Policies are arbitrary and capricious.

    C. Declaratory judgment that the SBA and Administrator Carranza unlawfully withheld agency action through their promulgation and/or application of the "Immigration Status" and "No Amendment" Policies.

    D. In the Alternative, Writs of mandamus ordering Defendants Carranza and Mnuchin to fulfill their duties to administer and fund EIDL loans to all entities that are eligible under the criteria set out in the CARES Act.

5. Enter an injunction to:

    A. order Defendants to rescind the unlawful "Immigration Status" and "No Amendment" policies;

    B. comply with the notice and comment requirements of the APA if Defendants intend to continue applying either of the policies, and revise the information, instructions, and forms to make clear that businesses with non-citizen owners without a green card or an approval notice for their adjustment of status application categorically do not qualify for EIDL loans but do qualify for EIDL grants;

    C. order Defendants to disburse to Plaintiff STAM the EIDL grant of $1,000 per employee/member based on STAM's amended application; and

    D. order Defendants to report to this Court when they have complied with the Court's orders;

6. Award Plaintiffs reasonable attorney fees, costs, expenses, and other disbursements for this action; and

7. Grant any other relief this Court deems just and proper.

Dated this 30th day of September, 2020.

    //

    //

    //

    //

    //

1

2                                                    *s/Nicolette Glazer*
                                                    _____
3                                                    Nicolette Glazer Esq. (CSBN 209713)
4                                                    nicolette@glazerandglazer.com
                                                    Larry R Glazer Esq. (CSB 200644)
5                                                    larry@glazerandglazer.com
6                                                    LAW OFFICES OF LARRY R GLAZER
                                                    1999 Avenue of the Stars #1100
7                                                    Century City, California 90067
8                                                    T:310-407-5353
                                                    F:310-407-5354
9                                                    ATTORNEYS FOR PLAINTIFFS and
10                                                   THE PUTATIVE CLASS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28